Yes. Good morning, Your Honors. Good morning. The main argument in this case Speak right up. Act like we're a group of twelfth graders. Okay. The main argument in this case is a basic Apprendi-Blaker, Blakely-Booker argument that the district court, in making several preponderance of the evidence, factual findings, its sentencing, ballooned this defendant's sentence from a guideline sentencing range of 12 to 18 months, which would have been the range supported by the jury's verdict, to a range of 188 to 235 months, and that the court imposed a 188-month sentence, clearly violating Blakely and Booker. You know, the difference between this case and some of the others is that he actually raised this issue. Absolutely. Which is amazing. Incredulous to me is this pro se defendant, as a result of having great difficulty with his sentencing counsel, wound up filing, I believe, four separate sentencing memorandums wherein he specifically objected to the jury, the drug quantity issue not being submitted to a jury, a non-beyond-reasonable-doubt finding that I believe subjects this error to harmless error review. Can I ask just one prefatory question? Mm-hmm. You're now his counsel. Yes, I am. And if it goes back, are you his counsel for sentencing? No. I believe he will. I'm CJA appointed on this case, Your Honor. So it would go back to the panel, and I'm hoping he would have another attorney, and Mr. Portman would see to that. You don't want to do that? I would do it, but if the court would order me to go back and do his sentencing, but no. No, we don't do that kind of thing. I was wondering if this business about the counsel that was rejected is moot, if there is a remand. I believe it is, because the Sixth Amendment violation on the denial of the right to counsel issue occurs post-trial and occurs at sentencing. So this Court's remand, I think, would obviate that issue as well on the sentencing issue. All right. Go ahead. Okay. What I'd like to do, Your Honor, is I think at this point the government is going to concede the remand in terms of the harmless error standard, or even if this Court were to engage in ameline plain error standard, this case clearly has to be remanded for resentencing. And my discussions with Ms. Rosen, she intends to raise the kind of scope of the remand argument. So what I'd like to do is reserve the rest of my time for rebuttal. I haven't quite heard the argument. It hasn't been briefed, so I'd like a moment to listen to her argument and then save the rest of my time for rebuttal. Unless the Court has other questions. Terrific. Okay. Thank you. We'll hear from the government at this time. Ms. Rosen. Good morning. Good morning.  May it please the Court, I'm Amber Rosen, representing the United States in this matter. Let me just start by saying it's true, we are going to concede the remand. Defendant's criminal history stretches back a quarter of a century, beginning with arrest when he was 10 years old and culminating in this conviction where he was seen by police officers putting a safe into his car containing six and a half pounds of methamphetamine and was found with more drugs and $100,000 of cash in his apartment. He received a fair trial and the conviction should be affirmed. Although his sentence of approximately 15 years while facing a 30-year maximum we believe is reasonable, we do concede that a remand is necessary in light of Booker and this Court's decision in Ameling based on the Court's mandatory application of the guidelines. If this Court finds no merit to the defendant's challenges to the district court's calculation of that guideline range, which we believe and will address if necessary that it should, then upon remand the district court should be instructed to consider the already determined guideline range and the parties in the court should be prevented from having to relitigate those issues which were already heavily litigated in the district court and are now being litigated before this court. You're saying that you want us to decide those issues? Yes. If we decide those issues rather than if we don't know what might have been done if the guidelines are advisory, why should we sort of project that if the judge relies on these things, then this is how they would come out? Well, I think with respect to a number of the claims of error being made, specifically drug quantity and the criminal history calculation, that we're not speculating. And we know what the arguments raised below were. We know what the district court did. The district court made factual findings. And this approach has been followed by two other circuits. Specifically, this is exactly what the court did in Hughes, the Fourth Circuit case, which this court in Ameline cited approvingly for its plain error analysis. And it said, in light of Booker, we vacate Hughes's sentence and remand for resentencing because we conclude that the district court correctly determined the range prescribed by the guidelines. On remand, the court shall consider that range as well as the other relevant provisions under the guidelines and the factors under 18 U.S.C. Section 3553A. So that was the approach taken in Hughes. And I think it's appropriate for reasons that are specifically talked about in the First Circuit's case antinocopolis. Excuse my pronunciation of that. In that case, the court – well, let me say, it's appropriate because the facts underlining, underlying the enhancements and the guideline criminal history calculation, those facts have not changed. So the reason – so there's no reason, even after Booker, that application of the enhancements should change if those findings are not clearly erroneous. And I think the First Circuit stated that. I'm not sure that I understand what the alternative is that you're arguing against. I guess I understand on one level, whether there's a formal instruction to start with that range. Right. But if it's sent back for the reasons that everybody understands, presumably the same district court is going to not say, well, I'm going to forget everything that happened before and act like it didn't happen, as opposed to, well, I've received lots of information about this already. That's already in the vault. Let's go from there. What's the substantial – substantive difference? It would just be to ensure that that's the case. I mean, you're right. The court – So you're asking us to tie the district judge's hands in case he might have said, well, I actually wouldn't have done this but for some fact that's no longer on the table. No. To the – to prevent, let's say, not so much to tie the district court's hands because I think you're right. There's no reason to think the district court would do anything differently this time, given that the record and the findings that it made and those findings not being clearly erroneous. But it would prevent, for example, the defendant from trying to raise again the issues about drug quantity or to get that relitigated and to require the government to have to respond to that or to have another hearing about that when there was an entire trial that addressed those issues. So it would basically be just an efficiency for – mostly for efficiency's sake and to say there's no reason that we're going to – this Court ought to decide those issues and resolve them, whether it then – I mean, so that they do not need to be and cannot be relitigated in the district court. And in some sense it gives the defendant an advantage. The government had urged the district court to find that there were 25 pounds of methamphetamine involved in the conspiracy, and the district court rejected that by limiting the remand so it was not to relitigate the claims of error brought before this court and already decided in the district court. You know, it would prevent the government also from going back and trying to relitigate those issues. One thing you probably should know, and it occurs to us because you both seem very well informed, but Ameline has gone in bank, and I think the order was entered on Friday. Oh, okay. I don't think that affects the substance of your argument. It's going to be argued March 24th, I think. No, it doesn't, because this is a harmless error case, at least with respect to the 6-1⁄2 pounds of drugs, and that is really the driving force in the guideline calculation, and I don't think we can meet our burden under harmful – harmless error analysis at this point in light of Booker in any event, so. In any event, what I was going to point out to the Court is in the First Circuit what the Court said was the fact that the judge – and this is – I'm quoting – the fact that the judge initially did the fact-finding on a certain factor is surely a different matter than what the judge would have done with that factor if the guidelines were not mandatory. And that's basically our point here, and it may be very well what the district court's approach would be, that is to say those findings have already been made, they're not clearly erroneous. Of course, the Court needs a chance now to go back and decide what to do with that given that the guideline range is a level 34 criminal history category 3, but at least the Court will know where to start in the analysis, and the parties will know, and it will give a clearer signal, and it will resolve the claims of error being made with respect to the drug quantity finding and the criminal history calculation. So if you – in your optimal world, what would the remand order read? It would say this Court shall be remanded – this case shall be remanded for resentencing in light of Booker based on the district court's error in applying the guidelines in a mandatory regime. Now the court is – the district court is instructed to consider – let me back up. This court finds there was no error with respect to the district court finding with respect to drug quantity or with respect to its criminal history category. Thus, the district court should be instructed to consider the already determined range as well as the other relevant factors in the guidelines and those factors under 3553A before imposing sentence consistent with this opinion and the Supreme Court's instructions in Booker. Thank you. It sounds like what you're asking us to write is a sentence that goes something like this. The district court having violated the defendant's Sixth Amendment right to have a trier of fact establish the quantity of the drug to the contrary notwithstanding, comma. Is that what you're arguing? No. I mean, the defendant now under Booker is entitled to have the district court make a factual finding by a preponderance of evidence of the drug quantity and use that to determine a guideline range, which is now not mandatory but advisory. So the defendant has gotten the first part of that right. The district court did make a factual finding by a preponderance of evidence of drug quantity. And it determined the guideline range, which it needs to do, as this court recognized under Ameline and under Booker, the first step the district court needs to do is determine the applicable range. But now what you'll be giving the district court the opportunity to do is determine what to do with that range. The range is going to be 100 or should be, we think, 188 to 235 months. And the district court can now decide in light of all of the evidence, in light of all of the factors to be taken into account under the statute, is that an appropriate, reasonable sentence. That's the part we don't know. Maybe the district court thinks that it is, and it wasn't, didn't feel constrained by the mandatory application of the guidelines. But maybe it did feel constrained, and it will do something different. And that's what the remand should be to determine. As an alternative, if the court does not believe that approach is warranted, we think at the very least this district court should resolve and take the time to resolve the factual claims of error with respect to the guideline calculation so at least the court will know what its starting point can be. And the Court in Ameline and this – and its decision in Moreno-Hernandez, it did resolve some of the claims of error with respect to the guideline calculation. And in footnote 10 of the Moreno-Hernandez decision, the Court said, By doing so, we assure that the district court will begin in this regard with the proper interpretation of the guidelines in determining how to exercise its discretion. So that approach is at least in countenance by this Court. I think we understand your argument. Thank you. Thank you, counsel. Rebuttal? Yes, Your Honor. I guess what I hear Ms. Rosen arguing for is some sort of partial remand. And I would just cite general law that partial remands are rare and there has to be a compelling reason. And I didn't really hear a compelling reason as to why. But it might be good for your client, too. Well, here's the problem, I think, because in asking this Court to exempt the preponderance of the evidence factual findings rendered by the district court, Ms. Rosen is actually asking this Court to determine post Booker what is the appropriate burden of proof at sentencing, which – and is implicitly arguing that preponderance of the evidence is the correct standard. And I would contend that it's asking this Court to wade in dangerous waters. The Court in Ameline indicated in a footnote that sometimes factual disputes at sentencing are resolved under a beyond reasonable doubt standard, a clear and convincing evidence standard or a preponderance standard, and that they declined to weigh in and decide whether Booker affected and whether Booker's remedial portion of the opinion affected the standard of proof at sentencing. And there are cases right now. There's United States v. Huerta-Rodriguez. There's United States v. West, where district courts are holding that certain factual findings need to be made beyond a reasonable doubt, even under the guidelines post Booker. And I think if you were to implicitly uphold the district court's factual findings and exempt them from the partial remand order, you would be saying that a preponderance of the evidence is the correct burden of proof. And I would ---- If you ñ if we were to say or a court were to say that post Booker preponderance is an appropriate standard in some respects, doesn't that give license to a case like Watts where the jury acquitted on some counts and the district court nonetheless aggravated the sentence based on the acquitted conduct? Yes, it would. And I would just suggest that if the court is inclined to consider this issue, as you brought up the Watts case, this is a very complicated issue, what the standard of proof should be post Booker. I mean, there's issues about is Harris still good law post Booker? Is McMillan still good law post Booker? What facts in sentencing are sentencing factors which might be subject to a preponderance standard or a clear and convincing evidence standard? And what facts in sentencing are part of the offense which would be subject to a beyond reasonable doubt standard? I just think that this issue is so wide open, it hasn't been briefed. It's kind of a last-minute argument for the government not to go home empty-handed on remand after having to concede this case. And I would suggest that it's not right for review in this case. You raised a number of other issues in your blue brief that were sentencing challenges, such as the expunged conviction and others. Yes. Are those questions of legal interpretation that we should resolve? In terms of the criminal history category issues? Right. Well, some of them are fact – I mean, I've argued them as factual considerations, that we have not taken issue – are you talking about the post Hayden application of the ex – the due process challenge action on ex post facto? Yes. I think that the Court could do that. But in reality, what's going to happen is, if I'm counsel on remand, all of these issues are going to be litigated. Not all of them were brought up the way that I would have brought them up in the district court. They will all be litigated. The Court will take into account the guidelines calculation it makes, the 35 – all the 3553a factors that they're now required – that the Court's now required to consider under Booker. And if the sentence rendered isn't reasonable, we'll be back to discuss, you know, whether it's reasonable or not and whether the facts the Court utilized in increasing a defendant's sentence 15-fold, not beyond a reasonable doubt, that issue may well be back before this Court, to be quite frank with you. So unless the Court has any other questions? I don't see any others. Thank both counsel for your argument. Very interesting case. And the public defender can do what she wishes, but I hope they keep you. Both. The case just argued will be submitted for decision and will proceed to the next case on the calendar, which is Fernandez v. San Francisco.
judges: Hawkins, McKeown, Clifton